IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVA C. MATTHEWS, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CASE NO. 1:03-cv-567-F |
| ) | (WO) |
| LES BROWNLEE, ) | |
| ) | |
| DEFENDANT. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. INTRODUCTION**

On May 27, 2003, Plaintiff Eva C. Matthews (hereinafter "Matthews"), an African-American female, commenced this discrimination action against her employer, the United States Army (hereinafter "Defendant").[1] Matthews brings this action pursuant to 42 U.S.C. §§ 2000e *et seq.* (hereinafter "Title VII") alleging the following counts: (1) sex discrimination, (2) race discrimination, (3) retaliation for prior EEO activity, (4) hostile work environment based upon race, and (5) hostile work environment based upon sex. Matthews requests a trial by jury and seeks the following relief: injunctive relief, compensatory damages, compensatory leave, attorney fees and costs. Matthews brings this action against her employer pursuant to Title VII. This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. # 11). For the reasons set forth below, the motion is due to be DENIED.

---

[1] Of course, the head of the Agency–namely, Les Brownlee, the Secretary of the Army– is named as the Defendant in this action.

## II.  JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).  The parties do not contest personal jurisdiction, and the Court finds adequate allegations in support of personal jurisdiction.  Venue is proper because all alleged events occurred in the Middle District of Alabama.

## III.  FACTS

The Court has carefully considered all deposition excerpts, affidavits, and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

In November of 1989, the United States Army hired Matthews as a civilian attorney for its Fort Rucker, Alabama, Judge Advocate General (hereinafter "JAG") office.[2] Matthews' discrimination complaints stem from the actions of her supervisors who have varied during the span of her employment. Since Matthews began her employment in 1989, she has been supervised by a series of Caucasian male Senior and Deputy JAG officers, except for one African-American JAG officer. These Caucasian supervisors, their positions and their respective periods of employment are as follows:

    a.    July 1994–June 1996:    COL John Phelps (Staff Judge Advocate) and MAJ John Burlingame (Deputy Staff Judge Advocate).

    b.    July 1996–June 1998:    COL Michael Hoadley (Staff Judge Advocate)

---

[2] Presently, and during the relevant time period, Matthews worked as the Chief of Claims Attorney in the Office of the Staff Judge Advocate at Fort Rucker.

|   |   |   |
|---|---|---|
|   |   | and MAJ John Winn (Deputy Staff Judge Advocate). |
| c. | August 1998 – July 2000: | COL William Stranko (Staff Judge Advocate). |
| d. | June 1998–Dec. 1999: | MAJ Samuel Hawk (Deputy Staff Judge Advocate). |
| e. | July 2000–June 2002: | LTC Kevin Lovejoy (Staff Judge Advocate) and MAJ Gary Brock (Deputy Staff Judge Advocate). |

The Deputy Staff Judge Advocate (hereinafter "DSJA") is Matthews' direct supervisor. Matthews is one of several civilian attorneys at Fort Rucker,[3] however, she was the only civilian attorney that occupied a supervisory position.

According to Matthews, since December 1995,[4] she has been subjected to unlawful discrimination which resulted in the filing of numerous EEO complaints.[5] These EEO (or administrative) complaints have been consolidated into the following three EEOC charges:

*A.     First EEOC Charge*

This EEOC charge involves several EEO complaints[6] wherein Matthews complains of discriminatory actions performed by MAJ Burlingame (DSJA). In the *first* administrative charge, Matthews complains that MAJ Burlingame treated her differently than her Caucasian male counterparts as she was (1) forced to leave her office door open, (2) subjected to

---

[3] For example, Blaine King and Michael Lonsberry, two Caucasian males, were also civilian attorneys at Fort Rucker, and were supervised by an Army Captain–the Chief of Administrative Law.

[4] Her first EEO contact was in December 1995.

[5] Matthews filed her first formal EEO complaint on May 13, 1996.

[6] This EEOC charge addresses four administrative charges and two EEOC appeals. These appeals were consolidated on April 16, 2002 by the EEOC.

3

derogatory "sensing sessions," (3) rudely told to "shut up" in front of subordinates, and (4) shouted at by MAJ Burlingame.  Matthews also complains that COL Phelps and MAJ Burlingame prohibited her from using basic management skills and supervising authority which impacted her ability to accomplish her mission and productivity; that she was not permitted to rate an African-American female subordinate employee; she was set up for failure by management by not receiving the necessary assistance when her office was backlogged and by management routinely reassigning her personnel to assist the Caucasian male Section Chiefs.  Matthews further complains that she was bypassed on matters affecting Claims personnel by not being permitted to rate the military personnel under her supervision; was closely supervised despite her 16 years of experience; and management displayed resentful, spiteful and demeaning behavior towards her on several occasions.

In Matthews' *second* administrative claim, she complains that she was subjected to discrimination when she learned that MAJ Burlingame told another employee that if he had his way she would not be working in the Claims Office; she was placed on leave without pay in September 1995; COL Phelps failed to approve her performance plan; in March 1996, she was excluded from a two hour briefing with the JAG Commander from Fort Mead, Maryland; in March 1996; a COL Phelps attempted to intimidate her into not pursuing her EEO complaint; on March 25, 1996, one of her subordinates informed her that he was being reassigned to another department due to her request when no such request had been made by Matthews; and MAJ Burlingame and COL Phelps wrongly gave her subordinates the impression that she was AWOL even though her leave had been approved.

In Matthews' *third* administrative claim, she alleges that she was subjected to unlawful discrimination when COL Hoadley and MAJ Winn monitored and interrogated her regarding a meeting of the Black Employment Program Committee on September 11, 1996; and she was denied compensatory time or overtime for duties performed in August 1996.

In Matthews' *fourth* administrative claim, she contends that she was further subjected to unlawful discrimination when, in March 1997, she was prohibited by MAJ Winn from delegation of routine correspondence (namely, typing) to a Caucasian clerk; MAJ Winn loudly shouted at her and stated that he would subject her to a typing and tutorial test, and hollered at her regarding her ability to type; when MAJ Winn and COL Hoadley permitted Caucasian attorneys to take their lunch at their discretion and work flexible schedules at home; when she was restricted to 45 minute lunch hours, but Caucasian employees were allowed to take 60 minute lunch hours; in February 1997, MAJ Winn began to assign Matthews to very short "suspenses" for tasks that had to be completed; management delayed processing of her time off awards; she received a counseling letter in her employment file because she contacted an EEO officer; management continued to deny her authority to approve leave for personnel she supervised; MAJ Winn shouted at her regarding matters of daily supervision; MAJ Winn delayed approval of her 1997 Performance Plan; and MAJ Winn retaliated against her by subjecting her to close scrutiny and harassment.

B.   *Second EEOC Charge*

In this EEOC charge, Matthews complains of fourteen incidents of unlawful sex discrimination, race discrimination, racial harassment and retaliation.  These incidents are

5

as follows: (1) LTC Stranko, MAJ Hawk and LTC Winn failed to provide Matthews with her 1998-1999 Performance Plan; (2) MAJ Winn and LTC Hoadley denied Matthews' official duty time for performance of Army Management Staff College duties; (3) after filing her EEO complaints, MAJ Winn denied Matthews compensatory time for work performed in excess of an eight hours tour of duty/40 hours per work week; (4) after the filing of her EEO complaints, MAJ Winn and LTC Hoadley treated Matthews differently than Caucasian attorneys in relation to compensatory time rules ; (5) LTC Stranko and MAJ Hawk withheld documents Matthews requested for her EEO complaint; (6) after she filed her EEO complaints, MAJ Winn and MAJ Hawk changed and implemented rigid rules regarding compensatory time, placed her under unusually close scrutiny to the extent of removing her discretion on whether to take lunch and restricted her lunch hour to 45 minutes; (7) Matthews reiterates her complaints regarding MAJ Hawk and LTC Stranko's failure to release the requested records to her for her EEO complaint; (8) LTC Stranko approached Matthews in a threatening manner as a result of her meeting with a TRADOC EEOC officer; (9) MAJ Hawk and LTC Stranko refused to consider Matthews for a lateral transfer to the vacant Procurement Contract Attorney position despite their knowledge of her interest in the position; (10) Matthews reiterates the denial of overtime credit and authorization to work compensatory time; (11) Matthews complains of rigid rules being implemented regarding compensatory time; (12) Matthews was excluded from the selection process of a Caucasian male who was employed as one of her subordinates; (13) Matthews' authority to supervise a Caucasian female NCOIC was removed and the insubordination of said female was

condoned; and  (14) Matthews was subjected to insults, humiliation and embarrassment by MAJ Winn and MAJ Hawk.

This charge resulted in a hearing before an EEOC Administrative Judge (hereinafter "AJ") wherein a hearing decision in Matthews' favor was rendered on July 2, 2002.  The AJ concluded that "after weighing [Matthews'] credibility and having considered the probative value of the evidence that was developed during the investigation, . . . [he was] persuaded that [Matthews] was subjected to a pernicious pattern of disparate treatment, with respect to the terms and conditions of her employment, because of her race, sex and prior EEO activity."  (Pl. Ex. 6).  The AJ further concluded that Matthews was due to receive the following relief: $33,782.00 in actual damages; $101,346.00 in non-pecuniary damages, $8,107.68 in interest, 240 hours in annual leave credit and 325 hours in sick leave credit. Moreover, the Defendant was directed to post a notice to the Fort Rucker JAG employees of the EEOC's finding of a Title VII violation and directed to provide all of the employees with at least one hour of training on Title VII's prohibition of unlawful discrimination.[7]

---

[7] According to the Notice provided in the decision,

> EEOC regulations require [Defendant] to take final action on the complaint by issuing a final order within 40 calendar days of receipt of the hearing file and this decision.  The [Defendant's] final order shall notify the complainant whether or not the [Defendant] will fully implement this decision, and shall contain notice of the complainant's right to appeal to the [EEOC], the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit.

No evidence before this court indicates the subsequent actions taken by the parties in relation to this decision.

C.   *Third EEOC Charge*

In this charge, Matthews complains that LTC Lovejoy harassed her by compiling a document which contained false and slanderous allegations of conduct which was attributed to Matthews; and her supervisor and the Defendant's chain of command initiated, condoned and or participated in the implementation of a "sensing session" for the purpose of creating a false and derogatory document to harm Matthews because of her prior EEO activity.

D.   *Specific Evidence Supporting Matthews' Claims*

Matthews has submitted to this Court an affidavit in which she outlines numerous facts in support of her claims.  Additionally, she has presented other evidence in support of her claims including evidence that Major Burlingame stated that Matthews was a "fucking nigger bitch" and a "troublemaker."[8]  Burlingame reacted with extreme anger when an attorney nominated Matthews for an award.  During this conversation, Burlingame again referred to Matthews as a "bitch."  There is testimony that part of Burlingame's animosity toward Matthews was connected to her EEO complaints.  Additionally, Matthews has submitted a copy of an email she received from Colonel Stranko, which contains sexual innuendo she found objectionable.  Matthews attended a mandatory office party, which to her surprise was a costume party at which the attendees were garbed in Confederate and Civil

---

[8] While Matthews has not offered evidence that she heard this offensive terms used to describe her, it is clear that this evidence is at least circumstantial evidence that Burlingame harbored negative animus towards her.

War era attire and at which a Confederate battle flag was displayed.[9]

## IV. DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party

---

[9] Defendant objects to much of Matthews' evidence. In part Defendant argues that the evidence is not properly authenticated or is hearsay. Evidence submitted in opposition to a motion for summary judgment need not be in an admissible form. It need only be capable of being submitted in an admissible form at trial. *See* Fed. R. Civ. P. 56(e); *Reeves v. Thigpen,* 879 F. Supp. 1153, 1165 (M.D. Ala. 1995). Accordingly the Court can consider Plaintiff's submissions. Moreover, to the extent that Defendant urges this Court to exclude Matthews' evidence pursuant to Federal Rule of Civil Procedure 37(c)(1), the Court is not satisfied that Defendant has made a sufficient showing pursuant to this rule to exclude the portions of Matthews' evidence it challenges.

to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

The Court has carefully considered all deposition excerpts, affidavits, and other materials submitted in support of and in opposition to the motion.  Because Defendant has moved for summary judgment, Court has viewed the evidence and testimony submitted in the light most favorable to Matthews and drawn all justifiable inferences from the evidence and testimony in Matthews' favor.  Because of the present procedural posture, this Court cannot and has not engaged in any credibility determinations in deciding this motion.  Although in some respects, this case presents some very close questions, this Court cannot say at this stage of the proceedings that there are no genuine issues of material fact, nor can the Court find that Defendant is entitled to judgment as a matter of law on Matthews' claims.  Consequently, Defendant's Motion for Summary Judgment (Doc. # 11) is DENIED.

DONE this 10th day of August, 2005.

          /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE